IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

**JUL 26 2012**

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

| | | |
|---|---|---|
| MOHAMMED NABIL KHATIB d/b/a | § | |
| 7 STAR GENERAL CONTRACTORS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-540-A |
| | § | |
| CATHAY BANK, | § | |
| | § | |
| Defendant, | § | |
| Third-Party | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| MAISA PROPERTY, INC., & | § | |
| NABIL KHATIB, | § | |
| Third-Party | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION</u>
<u>and</u>
<u>ORDER</u>

Now before the court is the motion for summary judgment

filed by defendant, Cathay Bank ("Cathay"), on May 23, 2012.

Plaintiff, Mohammed Nabil Khatib d/b/a 7 Star General Contractors

("7 Star"), has filed a response, third-party defendants, Maisa

Property, Inc. ("Maisa") and Nabil Khatib ("Khatib"), have

jointly filed a response, and Cathay has filed a reply. Having

now considered all of the parties' filings, the entire summary

judgment record, and applicable legal authorities, the court

concludes that the motion should be granted.

I.

## 7 Star's Claims and Cathay's Claim

7 Star initiated this removed action by the filing on July 5, 2011, of its original petition ("Petition") in the District Court of Tarrant County, Texas, 96th Judicial District, asserting claims and causes of action related to Cathay's attempt to foreclose on property where 7 Star was completing a construction project. In the Petition, 7 Star alleged claims for breach of contract, promissory estoppel, and unjust enrichment, and as relief, sought certain disclosures and damages for $159,000. 7 Star also stated that it had suffered an additional $300,000 in consequential damages.

Cathay filed an answer, and timely removed the action to this court. On August 11, 2011, Cathay filed a third-party complaint against Maisa and Khatib, seeking indemnification for all losses, damages, liabilities, obligations, judgments, and attorney's fees incurred in connection with this action. On May 23, 2012, Cathay filed the instant motion for summary judgment.

II.

## The Summary Judgment Motion

Cathay argues for summary judgment on the following grounds: (1) the breach of contract claim fails because there is no contract requiring Cathay to pay 7 Star for the work on the

construction project; (2) the promissory estoppel claim fails

because the parties' contracts disclaim any obligation for Cathay

to pay 7 Star, and 7 Star has not suffered from substantial

reliance on any alleged promise by Cathay; (3) the unjust

enrichment claim likewise fails because of the parties'

contractual disclaimer, and because no evidence can show that

Cathay obtained a benefit by fraud, duress or undue advantage;

and (4) finally, Maisa and Khatib should be held jointly and

severally liable to Cathay on the contractual indemnity claim for

the full amount of attorney's fees incurred in this action.

III.

Undisputed Facts Concerning 7 Star's Claims

The following facts are undisputed in the summary judgment

record concerning 7 Star's claims against Cathay Bank:

In 2008, Maisa executed two notes payable to Cathay Bank.

App'x at 1, ¶ 2, 7, 14. The first note was for the amount of

$1,300,000. Id. The second note ("Note Two"), executed by Maisa

in May 2008, was payable to Cathay in the amount of $1,450,000,

and secured by a deed of trust to property located at 7401

Matlock Road, Arlington, Texas. This second note, which forms the

subject of this action, was a construction loan to finance

construction of a retail center on the property. App'x at 1-2.

7 Star served as the contractor on the construction project (the

3

"Project"). Id. In connection with Note Two and the construction loan, Cathay, Maisa and Khatib signed a written Construction Loan Agreement ("Loan Agreement"), in which Khatib served as guarantor of the loan. App'x at 1-2, 22, 31.

When Maisa hired 7 Star as the construction company to build the Project, Maisa and 7 Star entered into a construction contract titled "AIA Document A101-2007 Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum" (the "Construction Contract"). App'x at 96. Under the Construction Contract, Maisa agreed to pay 7 Star the amount of $1,290,000 to build the Project. App'x at 98, § 4.1. Cathay, however, was not a party to the Construction Contract between 7 Star and Maisa. App'x at 96, 102.

Maisa and 7 Star also entered into an agreement titled "Assignment of Construction Contract and Consent of Contractor" ("Contractor Consent"), which was expressly made "for the benefit of" Cathay. App'x at 2, 103. The Contractor Consent stated: "Contractor [7 Star] acknowledges that Lender [Cathay] is obligated under the Loan Agreement only to Borrower [Maisa] and to no other person or entity." App'x at 106, ¶ 1. In addition, the Contractor Consent provides that Cathay "is not obligated to perform and does not undertake to perform any obligation, duty or

liability under the Construction Contract." App'x at 103-04, ¶ 2(b).

In connection with the Project, Cathay and 7 Star were both parties and signatories to another agreement, the Funds Control & Inspection Services Agreement ("Funds Control Agreement"), that was was also signed by Maisa and Tetra Tech, Inc. ("Tetra Tech"), a third-party inspection service. App'x at 2, 118-23. This Funds Control Agreement provided that Tetra Tech was retained by Cathay to inspect the Project and monitor and disburse payments according to the terms of the Construction Contract and the Loan Agreement. App'x at 118.

However, because of construction delays, Cathay and Maisa entered into several loan modifications.[1] On February 3, 2009, Cathay, Maisa and Khatib signed a Modification Agreement to give Maisa an option to extend the Construction Period, during which Maisa was making interest-only payments. App'x at 2, 124-25. The Modification Agreement also included requirements (the "Conversion Requirements") for Maisa as preconditions for the conversion of Note Two from the interest-only Construction Period to the Term Loan Period, a period in which Maisa would amortize

---

[1]Under the Loan Agreement, the completion date for the Project was May 14, 2009, one year after the date of Note Two and the Loan Agreement. App'x at 2, 31. Note Two provided that on that same date, Note Two would convert from the Construction Period, during which Maisa made interest-only payments, to the Term Loan Period, when Maisa would amortize the loan principal. App'x at 2, 14.

the loan principal. App'x at 2, ¶ 7, 125. One Conversion

Requirement, for instance, mandated that no default exist under

any of Cathay's loans to Maisa. App'x at 125.

Cathay, Maisa and Khatib then signed a series of four

Renewal, Extension and Modification Agreements ("REM

Agreements"). App'x at 2, 129, 137, 145, 153. Each of these four

REM Agreements extended the date of the expiration of the

Construction Period. App'x at 2-3, ¶¶ 8, 129, 139, 146, 154. The

last REM Agreement extended the expiration date to August 12,

2010. App'x at 3, 154.

Despite these extensions, however, Maisa defaulted under the

Loan Agreement.[2] App'x at 3, ¶ 12. Maisa also failed to meet the

requirement of a debt service coverage ratio of at least 1.2 to

1, and to provide Cathay written notice least 30 days before the

expiration of the Construction Period that it had met the

---

[2]The events constituting default were the recording of a Lis Pendens on the property by an entity called Ly Investments, LLC ("Ly"), and the filing of lawsuits by Ly against Maisa and Khatib. On May 11, 2010, Cathay learned that Ly had recorded a Notice of Lis Pendens against the real property securing Cathay's loans to Maisa, App'x at 3, 60, 93, 162, 164, and that Ly had sued Khatib in an action for fraudulent transfer. App'x at 2, 165, 168-71. Neither Maisa nor Khatib had informed Cathay of either event. App'x at 3, ¶ 11.

The Loan Agreement provides that the filing of a lien or other encumbrance against the real property is an event of default. App'x at 3, 47-50 § 6(f), (s). The Loan Agreement also provides that an event of default occurs if any lawsuit is filed against Maisa or Khatib that, if adversely determined, could substantially impact their ability to perform their obligations under the Loan Agreement or other documents related to Cathay's loans to Maisa. App'x at 3, 47-48, § 6(k). As of August 12, 2010, the lawsuit by Ly against Maisa remained pending and Ly had not released the Lis Pendens. App'x at 4, ¶ 13.

Conversion Requirements. Id. Thus, Note Two matured and the entire principal balance of Note Two became due and owing to Cathay. App'x at 4, ¶¶ 14, 153, 154, §§ 2, 3. As of August 12, 2010, the outstanding principal balance was $1,228,859.25, and to date, neither Maisa nor Khatib has paid Cathay that amount or any portion of it.  App'x at 4, ¶ 14.

Once Cathay learned on May 11, 2010, that Maisa had defaulted, Cathay had no further obligations to Maisa under the Loan Agreement, including any obligation to make further advances under Note Two. App'x at 3-4, 34, 37, § 3.21.  Thus, as of May 11, 2010, Cathay was relieved of any its obligations to Maisa under the Loan Agreement.

IV.

## Undisputed Facts Concerning Cathay's Claim

The court will now briefly summarize the undisputed facts concerning Cathay's claim for indemnification based on an alleged breach of contract by Maisa and Khatib. The parties do not dispute the existence of an indemnification provision in their agreements.  Three of the agreements mentioned previously, the Loan Agreement, the Contractor Consent, and the Guaranty Agreement, impose a duty to indemnify upon Maisa and Kahtib. Each agreement imposed on Maisa and Khatib a duty to indemnify Cathay from and against, without limitation, any claims and

7

damages arising from or relating to any of the loan documents, the real property securing the loan, or any litigation, including any legal fees and court costs incurred in connection with any such claims and damages.

V.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case.  Id. at 324.  See also Fed. R. Civ. P. 56(c) ("A party

asserting that a fact . . . is genuinely disputed must support

the assertion by . . . citing to particular parts of materials in

the record . . . ."). If the evidence identified could not lead

a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there

is no genuine dispute for trial and summary judgment is

appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587, 597 (1986).

VI.

<u>Analysis</u>

The court concludes that summary judgment is warranted for

Cathay on all the claims asserted by 7 Star. The summary

judgment evidence clearly establishes that the Cathay acted

consistent with the terms of its contracts, and no summary

judgment evidence establishes that 7 Star is entitled to recover

for its claims of breach of contract, promissory estoppel, or

unjust enrichment against Cathay. Furthermore, the court

concludes that Cathay is entitled to summary judgment on its

breach of contract indemnification claim against third-party

defendants Maisa and Khatib, and that Maisa and Khatib are

jointly and severally liable to Cathay for the attorney's fees,

legal expenses, and court costs incurred in litigating this

action.

A.    Breach of Contract Claim

    7 Star's claim for breach of contract fails as a matter of law.   The essential elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."   Smith Int'l, Inc. v. Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007).

    First, the summary judgment record shows that there is no contract between Cathay and 7 Star that requires Cathay to pay 7 Star for the construction of the Project. 7 Star bases its breach of contract claim on the Loan Agreement and the Construction Contract and asserts that a balance is due and owing on the latter. Pet. at 2, §§ IV, IX. However, the evidence shows that 7 Star is not a party to the Loan Agreement, and Cathay is not a party to the Construction Contract. See generally App'x at 31, 57, 96, 102.   Most importantly, under the Construction Contract, Maisa and 7 Star expressly agreed it is Maisa's obligation to pay for the construction of the Project. App'x at 98, § 4.1. Thus, 7 Star has not pointed to any summary judgment evidence to prove that Cathay committed a breach of contract.[3]

_____

    [3]7 Star also appears to argue that it was an intended third-party beneficiary of the Loan

(continued...)

Second, the evidence shows that Cathay is not obligated to pay for the project under the contract to which Cathay and 7 Star are parties. As the summary judgment record reflects, Cathay and 7 Star are both parties to only one contract, the Funds Control Agreement. App'x at 2, 118. While this Agreement touches upon Cathay's retention of Tetra Tech, it does not impose any obligation on Cathay's part to pay 7 Star for the construction of the Project. See generally Funds Control Agreement, App'x at 118-23. Finally, the evidence confirms that 7 Star expressly disclaimed any payment obligation by Cathay for the Project.[4] Contractor Consent, App'x at 106, ¶ 1.

In its response, 7 Star fails to raise a genuine dispute as to any material fact. 7 Star bases much of its response on its allegation that it completed the construction at issue, which is

_____

(...continued)
Agreement between Cathay and Maisa. See Pet. at 2, § V. A third party may recover on a construction contract only if the contracting parties intended to secure a benefit to the third party and entered into the contract "directly for the third party's benefit." See JP Morgan Chase Bank, NA. v. Tex. Contract Carpet, Inc., 302 S.W.3d 515, 530 (Tex. App.-- Austin 2009, no pet.). The Loan Agreement expressly states that no third party "shall have standing to require satisfaction" of Cathay's obligation to make loan advances or shall "be entitled to assume that [Cathay] will make advances in the absence of strict compliance" with any conditions to that obligation. App'x at 53, § 9.4. Thus, the summary judgment evidence fails to support 7 Star's claim to third-party beneficiary status.

[4]The Contractor Consent also provides that Cathay "is not obligated to perform and does not undertake to perform any obligation, duty or liability under the Construction Contract." App'x at 103-04, ¶ 2(b). Under the Construction Contract, Maisa--not Cathay--is obligated to pay 7 Star for construction of the Project. App'x at 96, 98, § 4.1.

disputed by Cathay.  The court, however, concludes this fact is not material to summary judgment. Whether 7 Star completed the construction is irrelevant to the breach of contract claim; regardless of whether the construction was complete, Cathay had no duty to pay 7 Star for the construction.

As another argument, 7 Star contends that a contractual payment obligation exists by referring to "a series of agreements accompanied by practices consistent therewith." Id.  The contracts in the summary judgment record, however, show that 7 Star disclaimed any such obligation for Cathay to pay 7 Star for the Project. See, e.g., Contractor Consent, App'x at 103-04, ¶ 2(b); see also App'x at 106, ¶ 1. Again, 7 Star fails to adduce any controverting evidence to show that any of the contractual provisions required Cathay to pay 7 Star.[5]  See App'x at 31, 96, 103, 118.

Accordingly, there is no genuine issue of material fact that would prevent summary judgment on the breach of contract claim. As a matter of law, 7 Star has no claim for breach of contract against Cathay.

---

[5] No such obligation for Cathay to pay 7 Star existed under any of the applicable agreements--(1) the Construction Contract (between Maisa and 7 Star), (2) the Construction Loan Agreement (between Maisa and Cathay), (3) the Contractor Consent (which Maisa and 7 Star made for the benefit of Cathay), and (4) the Funds Control & Inspection Services Agreement (to which Cathay and 7 Star are parties). App'x at 31, 96, 103, 118.

B.   Promissory Estoppel Claim

To prevail on a claim of promissory estoppel, 7 Star must prove there was (1) a promise by Cathay, (2) on which 7 Star foreseeably relied, and (3) on which 7 Star substantially relied to its detriment. See English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983). The court concludes this claim is unsupported by the evidence in the summary judgment record, as there is nothing to show that Maisa reasonably and foreseeably relied on a promise made by Cathay.   English, 660 S.W.2d at 524.

The element of substantial reliance is lacking for two reasons. First, Cathay points to evidence showing the existence of contracts that expressly disclaimed any alleged promise by Cathay to pay 7 Star for the construction project. The doctrine of promissory estoppel "presumes no contract exists." See Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 226 (Tex. 2002). If an express contract covers the subject matter of a dispute, there is no need to avoid injustice by enforcing an alleged promise though promissory estoppel. See Dardas v. Fleming, Hovenkamp & Grayson, P.C., 194 S.W.3d 603, 621 (Tex. App.--Houston [14th Dist.] 2006, pet. denied). Because 7 Star

entered into three contracts that cover the subject matter of this action, it cannot sustain a claim for promissory estoppel.[6] According to the Contractor Consent signed by 7 Star, for instance, Cathay did not owe any obligations under the Loan Agreement to any party other than Maisa, and Cathay had no obligation to 7 Star under the Construction Contract. App'x at 103-04, ¶ 2(b), and 106, ¶ 1. Given such an explicit disclaimer, 7 Star could have reasonably relied on any promise by Cathay to pay for the Project.

Moreover, there can be no detrimental reliance on a promise if the actions a party took would necessarily have been taken regardless of the alleged promise. See English, 660 S.W.2d at 524. Here, 7 Star agreed in the Construction Contract to build the Project for Maisa without conditioning this action on the performance of any promises by Maisa. App'x at 96-102, and 97 at art. 2. Thus, 7 Star has failed to show that it substantially relied on any alleged promise by Cathay to pay for the Project. In its response as well, 7 Star fails to point to any evidence in

---

[6] Whether 7 Star was entitled to payment from Maisa is an issue between 7 Star and Maisa, not Cathay. Under the Construction Contract between Maisa and 7 Star, it was Maisa that agreed to pay 7 Star for the construction of the Project. App'x at 96, 98, § 4.1. Under the Contractor Consent signed by 7 Star, Cathay was not obligated under the Loan Agreement to any person or entity other than Maisa and that Cathay also had no obligation under the Construction Contract. App'x at 103-04 2(b), and 106, ¶ 1. And under the Funds Control Agreement, which governs the relationship between Cathay and 7 Star with respect to the Project, Cathay again has no obligation to pay 7 Star. See generally App'x at 118-23.

the summary judgment record in support of its promissory estoppel claim.

The court concludes summary judgment is warranted on 7 Star's promissory estoppel claim.  The uncontroverted summary judgment evidence shows that there were contracts covering the subject matter of this action, and further, that 7 Star could not have substantially relied on any alleged promise by Cathay. Accordingly, 7 Star's promissory estoppel claim fails as a matter of law.

C.   <u>Unjust Enrichment Claim</u>

The court now considers the unjust enrichment claim. The evidence in the summary judgment record shows there are valid contracts covering the construction project on the property. When express contracts exist, a party cannot recover under a "quasi-contract theory" such as "unjust enrichment." <u>Fortune Prod Co. v. Conoco, Inc.</u>, 52 S.W.3d 671, 683-84 (Tex. 2000). As the court previously discussed in the promissory estoppel claim, 7 Star entered into three contracts related to the construction project it was involved in building, and these contracts all constitute the subject matter of this action. 7 Star has adduced no controverting evidence to show that these contracts were not valid or applicable.

Even if the court were to ignore the existence of these contracts and to permit 7 Star to assert its claims under "quasi-contract theories," however, the summary judgment evidence shows that the element of fraud or duress is lacking. The absence of these factors militates against any recovery under the theory of unjust enrichment. A claim based on the theory of unjust enrichment requires that a person obtained a benefit from another by fraud, duress or undue advantage. <u>Heldenfels Bros., Inc. v. City of Corpus Christi</u>, 832 S.W.2d 39, 41 (Tex. 1992). 7 Star fails to plead any facts, much less adduce any evidence, that even suggest the existence of such fraud, duress or undue advantage. Pet. at 3, § XVII. For this reason alone, summary judgment is warranted.[7]

Here, it is undisputed that there is an express contract covering the subject of the dispute, and there are no allegations, much less any evidence in the record, of fraud, duress or undue advantage. As a matter of law, therefore, 7 Star has no claim for unjust enrichment against Cathay.

---

[7]To the extent that 7 Star attempts to substitute a claim for <u>quantum</u> <u>meruit</u> for the unjust enrichment claim, Resp. at 2, the court is not considering such a claim. 7 Star has not pleaded such a claim in its Petition and may not belatedly plead it now.

D.    Indemnification for Breach of Contract

The court now considers Cathay's indemnification claim based on the alleged breach of contract by Maisa and Khatib. In the standard the court previously outlined, when a cause of action is based on breach of contract, a party must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Egle Group, LLC, 490 F.3d 380 at 387.

The summary judgment evidence establishes the elements for breach of contract. First, there were several valid contracts covering Maisa and Khatib's duty to indemnify. The court considers the three agreements in the record related to the indemnification claim: (1) the Loan Agreement, (2) the Contractor Consent, and (3) the Guaranty Agreement. The Loan Agreement, to which Cathay, Maisa and Khatib are parties, App'x at 2, 31, 103, imposed on Maisa and Khatib a duty to indemnify Cathay from and against, without limitation, any claims and damages arising from or relating to any of the loan documents, the real property securing the loan, or any litigation,[8] including any legal fees

---

[8]The indemnification agreement requires that Maisa and Khatib "indemnify, defend and hold harmless [Cathay] . . . from [and] against any and all ... claims ... costs and expenses to which [Cathay] may become subject [that] arise from or relate to any of the loan documents [or]
(continued...)

and court costs incurred in connection with any such claims and damages, App'x at 51-52, § 8.3. Similarly, under the Contractor Consent--which Maisa and 7 Star entered into for the benefit of Cathay--Maisa agreed to indemnify Cathay against any liability that Cathay might incur under the Construction Contract and against any and all claims that may be asserted against Cathay for any alleged obligation or undertaking to perform any of the terms, covenants or agreements in the Construction Contract, including without limitation all costs, expenses and reasonable attorney's fees. App'x at 103-04, § 2(c), (d). And, under the Guaranty Agreement, Khatib agreed to pay to Cathay all debt and other sums that become payable to Cathay under any documents relating to Cathay's loans to Maisa. App'x at 22, § 1.

Additionally, the evidence in the record shows that Maisa did not fulfill its obligations to Cathay under the contracts. Specifically, Masia failed to assume the responsibility for Cathay's defense in this action, and thus failed to satisfy the terms of the Contractor Consent to indemnify Cathay from the claims alleged by 7 Star. App'x at 51-52, § 8.3, and 176, ¶ 2. Cathay also points to evidence to show that it has suffered

---

[8](...continued)
the property . . . . " App'x at 51-52, § 8.3.

damages in the form of attorney's fees and costs in having to defend itself in this action. App'x at 176, 180.

In their response, Maisa and Khatib fail to carry their burden of raising an affirmative defense by showing that any of the exclusions to their indemnity agreement apply. The only exclusions to this indemnification agreement are that the indemnity "shall not apply to the gross negligence or willful misconduct of [Cathay]." App'x at 52, § 8.3.  The applicability of such exclusions is an affirmative defense. See Tesoro Petrol. Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 126 (Tex. App.--Houston [1st Dist.] 2002, pet. denied). In raising an affirmative defense to summary judgment, Maisa and Khatib bear the burden to "raise a fact issue on each and every element of [Cathay's] alleged gross negligence or willful misconduct so as to bring [Cathay's] indemnity claim within the exclusions in the indemnity agreement." Id.

The court concludes, however, that Maisa and Khatib neglect to carry this burden. Maisa and Khatib have failed to adduce any evidence to show that they should be excused from paying for Cathay's litigation expenses in the action 7 Star filed. They do not even mention "gross negligence," and fail to state in their

19

brief the elements of "willful misconduct," let alone allege any facts in support of those elements.[9]

Instead, Maisa and Khatib point to alleged breaches and waivers by Cathay of its contractual obligations that simply do not rise to the level of gross negligence or willful misconduct. See IP Petrol. Co. v. Wevanco Energy, L.L.C., 116 S.W.3d 888, 897 (Tex. App.--Houston [1st Dist.] 2003, pet. denied) (requiring "actual subjective knowledge of an extreme risk of serious harm" for gross negligence or willful misconduct). Maisa and Khatib attempt to re-frame the indemnity issue as a dispute over Cathay's performance under its contracts with Maisa, but this argument completely ignores the issue of whether Maisa and Khatib must indemnify Cathay for its expenses in the 7 Star suit. The court thus concludes there is no evidence in the record to support the applicability of either exclusion as an affirmative defense to the indemnity obligation, and summary judgment is warranted on Cathay's indemnification claim against Maisa and Khatib.

---

[9]Texas courts have defined "willful misconduct" in a manner akin to "gross negligence." See IP Petrol. Co. v. Wevanco Energy, L.L.C., 116 S.W.3d 888, 898 (Tex. App.--Houston [1st Dist.] 2003, pet. denied). There is, however, is no summary judgment evidence in the record that could support a conclusion that Cathay acted in a manner constituting willful misconduct or gross negligence. Id.

In sum, the summary judgment evidence establishes that contracts existed among Cathay, Maisa and Khatib; that although Maisa performed under the contracts, Maisa and Khatib did not perform their contractual duty to indemnify Cathay in this action; and that Cathay sustained damages as a result and is entitled to recover those damages jointly and severally from Maisa and Khatib. Accordingly, Cathay is entitled to recover from Maisa and Khatib, jointly and severally, the reasonable attorney's fees, legal expenses, and court costs that it has incurred in connection with this action.

E.   Reasonableness of Attorney's Fees

The court now considers the reasonableness of the amount requested for attorney's fees, legal expenses, and court costs. With respect to the amount for attorney's fees, the Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. The lodestar is presumed to yield a reasonable fee. La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995). Where "an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of

21

prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is prima facie reasonable." La. Power & Light, 50 F.3d at 328.

Cathay requests compensation for the total amount of attorney's fees, legal expenses and court costs, which equal $85,164.80. App'x at 176-79, ¶¶ 2-16. In support of the request, Ellis, as counsel for Cathay, has provided an affidavit and several tables of billing records, partially redacted, from Locke Lord, LLP, that reflect reductions in the amounts actually charged to Cathay. App'x at 176-179, 181-230. It appears that five attorneys, Barbara Ellis, James Bilton, Kent Hoffman, Scott Koelker, and Carl Scherz, worked on the action, along with paralegal Camille Kerr and research assistant Joan Haas.

The affidavit states that between July 11, 2011, the date Locke Lord's work in this action began, and April 30, 2012, Cathay had incurred $91,679.76 in attorney's fees, legal expenses, and court costs, but that the amount requested for reimbursement was reduced to $70,686.05, to take into account several factors, including the exercise of billing judgment. The affidavit further states that in May 2012 through May 19, 2012, Cathay incurred an additional $14,478.75 in attorney's fees, legal expenses, and court costs. The total amount requested is

therefore $85,164.80, which the court concludes reflects the exercise of billing judgment.

The court now considers the arguments made by the opposing parties concerning the amount of the fee. The court finds it significant that Maisa and Khatib present no evidence in opposition to Cathay's claim for attorney's fees. Thus, they do not provide any evidence to create a fact issue as to the amount of Cathay's damages. The only reference to damages by Maisa and Kahtib is a one-sentence conclusory statement in their brief comparing the amount of Cathay's attorney's fees to the damages sought by 7 Star. They do not, however, dispute the necessity for the work or more importantly, point to any facts or evidence in support of their argument on reasonableness of the amount.

Having considered the affidavit of Barbara Ellis and the billing records of Locke Lord, LLP, the court concludes that the amount requested by Cathay is reasonable, and that Cathay is entitled to recover jointly and severally from Maisa and Nabil Khatib the amount of $85,164.80.

VII.

Order

Therefore,

The court ORDERS that all claims and causes of action brought by plaintiff, Mohammed Nabil Khatib d/b/a 7 Star General

23

Contractors, against defendant, Cathay Bank, be, and are hereby, dismissed with prejudice.

The court further ORDERS that, Cathay Bank have and recover jointly and severally from third-party defendants, Maisa Property, Inc. and Nabil Khatib, the amount of $85,164.80.

SIGNED July 26, 2012.

_____
JOHN McBRYDE
United States District Judge

24